UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Auto Owners Insurance Company,

Plaintiff,

vs.

REPORT AND RECOMMENDATION

Mary Ann Mattison,

Defendant.

Civ. No. 01-107 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 6th day of June, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Dismiss or, in the alternative, to Stay this cause of action.

A Hearing on the Motion was conducted on March 15, 2001, at which time the Plaintiff appeared by Barry P. Hogan, Esq., and the Defendant appeared by Gary M. Hazelton, Esq.

For reasons which follow, we recommend that the Defendant's Motion to Dismiss be denied, and that its Motion to Stay be granted.

16

JUN 06 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural History

This action arises out of a car accident that occurred on August 13, 1994. On that date, the Defendant's car was rear-ended by a car driven by Kevin Leroy Wendt ("Wendt"). At the time of the accident, the Defendant possessed insurance coverage that was being provided by the Plaintiff Auto Owners Insurance Company ("Auto Owners"). Wendt, however, did not possess insurance coverage at the time of the accident.

As a result of this accident, the Defendant sustained a variety of injuries. Consequently, on November 4, 1998, the Defendant served Wendt with a Summons and Complaint, thereby initiating a personal injury action against him in Minnesota State Court. Following the initiation of the State Court lawsuit, representatives of Auto Owners were provided with a variety of documentation relating to the Defendant's claim against Wendt. Thereafter, on December 19, 2000, Auto Owners filed a Motion for Intervention, requesting that it be allowed to intervene in the State Court action between the Defendant, and Wendt.[1] On January 17, 2001, Auto Own-

---

[1]According to Auto Owners, its intervention was necessary because it had an interest in the lawsuit between Wendt and the Defendant arising from the fact that, apparently, Wendt had failed to enter an appearance, or respond to the Complaint in that proceeding, as he had passed away. As such, Auto Owners was fearful that, absent intervention, the Defendant would be able to obtain a Default Judgment against Wendt. The Default Judgment could then be (continued...)

er's Motion for Intervention was granted by the Minnesota District Court for the Seventh Judicial District.

On the same day that Auto Owners was allowed to intervene in the State Court proceeding, it filed a Complaint, in this Court, seeking a Declaratory Judgment that it not be required to pay the Defendant her uninsured motorist coverage benefits.[2] This Declaratory Judgment action is predicated upon Auto Owner's contention that the Defendant failed to commence her uninsured motorist claim,

---

[1](...continued) enforced in a subsequent proceeding against Auto Owners, that the Defendant could commence so as to collect underinsured motorist benefits. Auto Owners was equally concerned that the Default Judgment would serve as conclusive evidence of Wendt's liability, and of the amount of damages that are owed to the Defendant as a result of Wendt's negligence. According to Auto Owners, "[a] default judgment obtained by an insured against an uninsured motorist is conclusive as to liability and damages that the insured was entitled to recover pursuant to the uninsured motorist provision of a liability policy issued by her insurer even though she did not have the insurer's consent to sue the uninsured motorist where the insurer had full notice and opportunity to intervene and present any defenses and arguments necessary to protect its position." See, Defendant's Memorandum, Ex. K., at unnumbered page 2, citing Champion Insurance Company v. Denney, 55 So.2d 137 (Ala. 1989). Given this potentiality, Auto Owners felt that its intervention in the State Court proceeding was required, so as to prevent it from being bound by the Judgment that the Defendant was likely to obtain, against Wendt, in the State Court case.

[2]Auto Owners is domiciled in Lansing, Michigan, while the Defendant is a Minnesota resident. See, Complaint. As such, this Court has jurisdiction over Auto Owner's Declaratory Judgment action by virtue of the parties' diversity of citizenship, and the presence of the requisite amount in controversy. See, Title 28 U.S.C. §1332.

against it, within the applicable six-year statute of limitations. See, Minnesota Statutes Section 541.01, Subdivision 1.[3] This action does not involve any allegations, by Auto Owners, that the insurance coverage provided to the Defendant is in dispute, or that the language of the insurance policy needs to be determined.

## III. Discussion

According to the Defendant, we should decline to exercise jurisdiction over this case, in order that Auto Owner's statute of limitations defense can be consolidated with the rest of the State Court proceedings. The Defendant argues that, because Auto Owners is seeking a Declaratory Judgment, it should not be regarded as the ordinary Plaintiff, whose choice of forum should be given controlling weight. Further, the Defendant suggests that, because Courts have the discretion to decide whether to entertain a Declaratory Judgment action, and are empowered to dismiss such an action when it appears that a declaratory plaintiff's filing was motivated by forum shopping, a Stay of the action, while the underlying claims are litigated in State Court, would be in the best interests of justice. On the other hand, Auto Owners opposes the Motion, and maintains that the Defendant's lawsuit, in Minnesota State Court,

[3]According to Auto Owners, the Defendant had notice that Wendt was uninsured on August 25, 1994. See, Complaint. Apparently, however, the Defendant has yet to commence an action against Auto Owners in order to recover any uninsured motorist benefits. Id.

was a "preemptive strike," which was designed to obtain an inflated Jury Verdict against Wendt, which would then be enforceable against Auto Owners, even though Auto Owners would not have had an opportunity to be heard in that proceeding, or to remove that action to Federal Court.

A. Standard of Review. Auto Owner's Federal action is for declaratory relief, and it was commenced under this Court's diversity jurisdiction. "Years ago, the Supreme Court noted that district courts are 'under no compulsion to exercise' their jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201, 2202 (1988)." U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 260 (8th Cir. 1994), citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942); see also, Wilton, et. al. v. Seven Falls Company, et al., 515 U.S. 277, 289-290 (1995)("[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion").

As our Court of Appeals has explained:

> The [Supreme] Court [has] said, "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart v. Excess Ins. Co. of Amer-

> ica, 316 U.S. 491, 494 (1942). Since then, the Court reaffirmed its "prior holding that a federal district court should, in the exercise of discretion, decline to exercise diversity jurisdiction over a declaratory judgment action raising issues of state law when those same issues are being presented contemporaneously to state courts." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 126 (1968)(citing Brillhart, 316 U.S. 491). Very recently, the Court reiterated the position: "As we have noted, the Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established." Cardinal Chem. Co. v. Morton Int'l, Inc., 113 S.Ct. 1967, 1974 n. 17 (1993) (citing Brillhart, 316 U.S. at 494-96). The language of the Act dictates that result: "In a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration * * *" 28 U.S.C. §2201 (emphasis added).

U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., supra at 260-261.

After Brillhart, the Supreme Court articulated an "exceptional circumstances test" for determining whether a Federal Court should defer to paralleling State Court litigation. See, BASF Corp. v. Symington, 50 F.3d 555, 557 (8th Cir. 1995), citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983).

"While the Circuits are split as to whether this test applies to declaratory judgment cases," our Court of Appeals has decided that "only in exceptional circumstances should a district court stay or dismiss a declaratory judgment action subject to parallel state litigation, even if diversity of citizenship is the only jurisdictional foundation." BASF Corp. v. Symington, supra at 557, citing U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., supra at 261, 262, n.2, 262-263; Ins. Co. of Pennsylvania v. Syntex Corp., 964 F.2d 829, 834 (8th Cir. 1992).

B. Legal Analysis. "In exercising their discretion whether to entertain declaratory actions, courts have on occasion stated that declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit." BASF Corp. v. Symington, supra at 558, citing Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969), cert. denied, 395 U.S. 959 (1969); Koch Eng'g Co. v. Monsanto Co., 621 F. Supp. 1204, 1207 (E.D. Mo. 1985); Nat'l Union Fire Ins. Co. v. Lippert Bros., Inc., 233 F. Supp. 650, 656 (D. Neb. 1964); Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 248 (1952)(criticizing declaratory plaintiff's use of Declaratory Judgment Act for procedural advantage, but dismissing ultimately for lack of jurisdiction); First Fed. Sat. & Loan Assen

v. Anderson, 681 F.2d 528, 533-34 (8th Cir. 1982)(same); Lawrence County v. South Dakota, 668 F.2d 27, 30-31 (8th Cir.1982)(same). "Declaratory judgment actions may on occasion merit 'a closer look' to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns." BASF Corp. v. Symington, supra, citing Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993); accord, Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill, 751 F.2d 801, 804 (5th Cir.), cert. denied, 474 U.S. 909 (1985). Normally, a suit for Declaratory Judgment, which is aimed solely at wresting the choice of forum from the "natural" plaintiff, will be dismissed. See, BASF Corp. v. Symington, supra at 558, quoting Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 10 F.3d 425, 431 (7th Cir. 1993); accord, Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 577-78 (7th Cir. 1994); see also, Kahn v. General Motors Corp., 889 F.2d 1078, 1082 (Fed. Cir. 1989)(attempts to litigate by declaration, issues pending elsewhere, will be rejected absent "sufficient reason").

In BASF Corp. v. Symington, supra, our Court of Appeals confronted a Motion to Dismiss a Declaratory Judgment action under circumstances similar to those presented here. In BASF, Symington, who was the "natural" plaintiff, filed a products liability suit, against BASF, in New Jersey State Court. See, BASF v. Symington, supra at 556. On the following day, BASF filed a Declaratory Judg-

ment action in North Dakota, claiming that North Dakota's statute of limitations barred Symington's claim. Id. Our Court of Appeals held that the District Court in North Dakota should have exercised its discretion by dismissing the Declaratory Judgment action. In so holding, the Court explained:

> It is * * * true * * * that courts regularly consider the merits of affirmative defenses raised by declaratory plaintiffs, and so Symington is off the mark in advocating a blanket prohibition on raising affirmative defenses by declaratory action. Kelly v. Robinson, 479 U.S. 36, 40 (1986)(entertaining without comment the affirmative defense of discharge in bankruptcy); Ernst & Young v. Matsumoto, 14 F.3d 1380, 1383-84 (9th Cir. 1994)(statute of limitations); Hotel & Restaurant Employees Union v. J.P. Morgan Hotel, 996 F.2d 561, 563 (2nd Cir. 1993)(arbitration and award); Hoelzer v. City of Stamford, 933 F.2d 1131, 1135-37 (2nd Cir. 1991)(statute of limitations); Newman v. First Sec. Bank of Bozeman, 887 F.2d 973, 974-75 (9th Cir. 1989)(discharge in bankruptcy); Barry v. Donnelly, 781 F.2d 1040, 1042-43, (4th Cir. 1986)(statute of limitations); Shell Oil Co. v. Hickman, 716 F. Supp. 931 (W.D. Va. 1989) (same). See also, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 502 (1959)(entertaining duress affirmative defense without comment and stating that any defense may be raised by declaratory action); Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994)(stating in dicta that the affirmative defense of estoppel could form the basis of an ERISA claim for declaratory relief).
>
> * * *
>
> None of the above-cited instances in which courts have seen fit to consider affirmative defense-based declaratory actions involved a

> threat to an injured party's right to choose its forum. As explained above, the natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances. Reid-Walen, 933 F.2d at 1394-95. Here, we are convinced that BASF's declaratory action in North Dakota is chiefly calculated to take advantage of favorable statute of limitations law. Symington has chosen to sue in New Jersey, and a judgment in the North Dakota declaratory action will complicate or possibly even preclude her suit there. This is a misuse of the declaratory judgment act of the type discussed above.
>
> **It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue.**

BASF Corp. v. Symington, supra at 558 [emphasis added].

The circumstances, here, raise the same considerations that were addressed in BASF, and we adhere to the Court's holding there. In reaching its decision in BASF, our Court of Appeals relied upon a number of factors that are also extant here -- and, particularly, the use of a Declaratory Judgment vehicle to assert an affirmative defense, when the party seeking declaratory relief is a party in the paralleling State Court proceeding. The Court concluded that, under such circumstances, no declaratory relief was required. Id. at 559.

In denying a Federal avenue for declaratory relief, the Court explained that its conclusion rested upon the "exceptional cir-

cumstances" test, which is employed when determining whether a Federal Court should defer to paralleling State proceedings, and which was enunciated in Colorado River Water Conservation Dist. v. United States, supra, and Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., supra; see also, United States Fidelity and Guar. Co. v. Murphy Oil USA, Inc., supra at 261 (only in exceptional circumstances should a District Court stay or dismiss a Declaratory Judgment action subject to parallel state litigation).

Auto Owners appears to overlook the import of the Court's disapproval, in BASF, of employing Declaratory Judgment actions for purely tactical, or strategic reasons. We are mindful of the concerns that Auto Owners has expressed in defending its decision to intervene in the State Court action and, on the same day, commence an action in this Court for essentially the same relief. Although the Plaintiff was somewhat elliptic in explaining why two legal proceedings were necessary to accomplish the work of one, what it has said is unconvincing.[4] The State Court was sufficiently persuaded, that Auto Owners had legal interests in peril in the pro-

[4]Simplistically, Auto Owners emphasizes that the State Court action sounds in tort, while the Federal Court action seeks declaratory relief, as if that were a distinction which makes a difference. By intervening in the State Court action so as to interpose the same defenses, which they seek to raise here, any generic difference in the claims being considered in either Court has effectively been removed.

ceeding before it, as to allow Auto Owners to intervene. Auto Owners does not suggest that the intervention was for a limited purpose, or that the State Court has expressed a disposition to limit the claims before it in such a way as to deprive Auto Owners of justice. If, as Auto Owners contends, the intervention in State Court was to protect against the entry of a Default Judgment, which the Defendant could execute, directly or indirectly, against it, then we fail to see how that intervention does not, necessarily and inextricably, entwine Auto Owners' interest in securing a declaration that, having failed to directly sue Auto Owners within the time allowed under Minnesota law, the Defendant has lost any claim for Uninsured Motorist coverage against it.

While Auto Owners voices a preference to have the declaratory relief secured in Federal Court, the fact that Auto Owners intervened, voluntarily, in the State Court, would have as much impact on the merits of the declaratory claim in Federal Court, as it would in State Court. Having intervened in the State Court action, and having commenced this Federal action to effectively secure the same relief, Auto Owners now is engaged in classic forum-shopping[5] -- they wish to select the forum for their declara

---

[5]We appreciate Auto Owners attempt to distinguish BASF Corp. v. Symington, 50 F.3d 555 (8th Cir. 1995), by stressing that it had no say in the selection of the Minnesota forum, since the Defendant (continued...)

tory relief. Such litigation strategies bear little weight under these circumstances. BASF Corp. v. Symington, supra at 558 (emphasizing that Declaratory Judgment actions sometimes merit close scrutiny "to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns."); Int'l Assoc. of Entrepeneurs of America v. Angoff, 58 F.3d 1266, 1270 (8th Cir. 1995)("[T]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action.").

In reaching the conclusion we have, we have given close attention to the abstention factors[6] enumerated in Colorado River/Moses

---

[5](...continued) did not sue Auto Owners in her original State Court Complaint. While true, Auto Owners ignores that it selected that forum by choosing to intervene in those proceedings.

[6]The abstention factors, derived from Colorado River/Moses H. Cone, are as follows:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority -- not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and

(continued...)

H. Cone, which were adopted by the Court, in Murphy Oil for application in Declaratory Judgment actions such as this one. See, U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., supra at 263. None of the factors counsel a Trial in Federal Court. There is no "res" in the strict sense of the term, the Federal Court action would not increase the inconvenience to the parties, other than to inflict a duplication of legal proceedings. The pursuit of a Federal claim would not appear to result in piecemeal litigation, except to the extent that both actions should be allowed to proceed with the potentiality of conflicting results. While the State Court action has priority, by virtue of being the first-filed, as to Auto Owners joinder in that action, it appears to be contemporaneous with its commencement of this Federal proceeding. Plainly State law applies in the Federal and State proceedings, and we have no evidence that Auto Owners' rights would not be adequately protected, although we are mindful of Auto Owners' concern that the State Court

---

[6](...continued)

(6) the adequacy of the state forum to protect the federal plaintiff's rights.

Federated Rural Electric Ins. Corp. v. Arkansas Electric Cooperatives, Inc., 48 F.3d 294, 297 (8th Cir. 1995), citing U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994).

In BASF Corp. v. Symington, 50 F.3d 555, 559 (8th Cir. 1995), the Court added "forum shopping" to the listing of factors appropriate for consideration.

might not allow a full Hearing on Auto Owners' statute of limitations defense. Lastly, as we have already expressed, we are troubled by the prospect that the Federal Court proceeding may have been "filed for a vexatious, reactive or tactical reason." Federated Rural Electric Insur. Corp. v. Arkansas Electric Cooperatives, Inc., 48 F.3d 294, 299 (8th Cir. 1995). In our considered view, these factors counsel abstention.

We do not believe that a dismissal of the Federal action would be appropriate, however, despite the fact Auto Owners has not cogently demonstrated any likelihood that the State Court will decline to entertain its statute of limitations defense. We cannot foreclose that possibility, only because we are removed from those proceedings, and the intricacies of fact, and law, which should ultimately govern their progress to Trial. In such a circumstance, our Court of Appeals has favored a Stay or a dismissal. As the Court explained, in Int'l Assoc. of Entrepeneurs of America v. Angoff, supra at 1271:

> [B]ecause concurrent jurisdiction exists in state and federal court to decide the question of [plaintiff's] ERISA status, the district court should not have dismissed for lack of jurisdiction under Fed.R.Civ.P. 12(b)(1). While pre-answer motions are ostensibly enumerated in Fed.R.Civ.P. 12(b), district courts have the discretion to recognize additional pre-answer motions, including motions to stay cases within federal jurisdiction when a parallel state action is pending. Brillhart

> v. Excess Ins. Co. of America, 316 U.S. 491, 494-96, 62 S.Ct. 1173, 1175-76, 86 L.Ed. 1620 (1942); see generally, 5A Wright & Miller, § 1360 at 432, 438-41 (1900 & Supp. 1995). Here, while the state court action may finally resolve the case, it is also possible that further federal proceedings may prove necessary. So long as a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of absention. See, Wilton [v. Seven Falls Co.,] 515 U.S. [277] at [288 n. 2], 1215 S.Ct. [2137] at 2143 n. 2, [132 L.Ed.2d 214 (1995)]; Bob's Home Service, Inc. v. Warren County, 755 F.2d 625, 628 (8th Cir. 1985); 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, § 4247 at 136-38 (1988).

See also, Capitol Indemnity Corp. v. Haverfield, 218 F.3d 872, 872 n. 2 (8th Cir. 2000)(recognizing "that a stay rather than dismissal is the preferred mode of absention when the possibility of return to the federal court remains."); Yamaha Motor Corp. USA v. Stroud, 179 F.3d 598, 604 (8th Cir. 1999)(same).

Although the Defendant did not file a pre-Answer Motion to Dismiss, her Motion to Dismiss or, alternatively, for a Stay, comes at a time when this case is in its infancy, and when the full nature of Auto Owners' status, as an intervenor in the State Court remains unknown, at least as to this Court. We believe that these factors counsel the issuance of a Stay which will preclude this case from proceeding until we hear further from the parties as to the progress of the State Court litigation.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Dismiss [Docket No. 6] should be denied, and the Defendant's Alternative Motion to Stay [Docket No. 6] should be granted.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 23, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 23, 2001,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to